FILED

98 JUL 31 AM 9:41

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

PEGGY SUE HARRIS,
    Plaintiff;

-vs.-

MRS. WINNER'S, L.P.,
    Defendant.

No. CV97-P-1654-S

ENTERED
JUL 31 1998

## OPINION

The defendant, Mrs. Winner's, L.P., filed a motion for summary judgment on March 9, 1998 that was considered at the June 26, 1998 motion docket. For the reasons expressed below, this motion is due to be granted.

### Facts[1]

The plaintiff's husband was a unit manager at a Lee's restaurant operated by the defendant. At her husband's request, the plaintiff was hired as a team member on January 8, 1996. Although the plaintiff maintains that she was hired as a permanent employee, the defendant contends that she was hired on a temporary basis to help her husband implement a new computerized register system. The hierarchy of positions at Lee's was as follows: team member, team leader, assistant manager, unit manager, area supervisor, director of operations, vice president of operations, and regional president of operations. The defendant's discipline policy provides that except in cases involving dishonesty, drug or alcohol use, safety or other aggravated offenses, employees usually receive a written and oral warning before being terminated.

---

[1] The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.

In early February, 1996, the plaintiff's husband was injured and took worker's compensation leave from Lee's. On February 6, 1996, the plaintiff spoke to the defendant's vice president of operations, Rusty Creel, on behalf of her husband. Specifically, the plaintiff told Creel that Wayne Cornelius, the area supervisor, falsified inspection reports concerning her husband's restaurant. The plaintiff expressed concerns to Creel that she would suffer repercussions for reporting these managerial issues.

On February 9, 1998, the plaintiff questioned her acting store manager, Jason Brown, about whether he had told other employees to stay away from her because she had raised managerial issues with Creel. The conversation took place in the customer seating area of the restaurant. Unbeknownst to the Brown, the plaintiff was recording the conversation on a tape recorder hidden in her clothing.[2] The plaintiff became agitated and would not permit Brown to respond to her questions. After the plaintiff accused Wayne Cornelius of falsifying reports, Brown suggested that she speak to Cornelius.

The plaintiff traveled to the restaurant in which Cornelius was working and spoke to him. The plaintiff secretly recorded this conversation. In addition to accusing Cornelius of telling employees to stay away from her, the plaintiff confronted Cornelius about a report from managerial employees that her husband had previously come to work smelling of alcohol. The plaintiff also contested a female employee's management position, insisting that if the employee was indeed a Team Leader, Cornelius needed to correct the paperwork. Cornelius then told the plaintiff that she was "through," meaning terminated.

---

[2] The plaintiff testified in her deposition that she recorded the conversations so that she could play them for her husband.

2

Following her termination, the plaintiff timely filed an EEOC charge alleging sex discrimination with respect to her discharge. In the EEOC charge, the plaintiff stated that she was hired as a Crew Leader and that the reason for her discharge was that her services were no longer needed. Unable to conclude that the defendant had violated Title VII, the EEOC issued a Dismissal and Notice of Rights. The plaintiff subsequently filed this lawsuit, alleging that she was terminated because of her sex, in violation of Title VII. The plaintiff also claimed that she was subjected to disparaging remarks regarding women and their place in the work force.

## Analysis

1. Termination

The plaintiff must prove intentional discrimination to succeed on her claim of disparate treatment under Title VII. The plaintiff can do this by presenting direct evidence of discriminatory intent such as a decisionmaker's discriminatory remarks made in the context of his decision. *See Walker v. Nationsbank of Florida, N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995); *Buckley v. Hospital Corp. of America, Inc.*, 758 F.2d 1525, 1529-30 (11th Cir. 1985). The plaintiff can also prove intentional discrimination by presenting circumstantial evidence pursuant to the burden-shifting regime of *Mc Donnell Douglas Corp. v. Green*, 411 U.S. 293 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). First, the plaintiff must establish a prima facie case by showing that (1) she belongs to a protected class; (2) she was qualified for the position held at the time of discharge; (3) she was discharged; and (4) she was replaced by a male whose qualifications were equal or inferior to hers. *See Walker*, 53 F.3d at 1556.

After the plaintiff establishes a prima facie case, the burden shifts to the employer to

articulate a legitimate nondiscriminatory reason for the employment decision. *See Burdine*, 450 U.S. at 256-59. If the defendant can meet its burden of production, the plaintiff must then establish that the defendant's proffered reason was a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804. The plaintiff can do this by proving that the employer actually relied on gender in making its decision. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989).

The plaintiff in this case has not presented direct evidence of discriminatory intent because she has not linked the alleged discriminatory remarks to a decisionmaker making a particular decision. Although the plaintiff claims that Cornelius and Brown made sexist comments about female employees and customers, the plaintiff has not established a connection between the comments and Cornelius's decision to terminate her. The plaintiff has not produced direct evidence showing that discriminatory intent motivated Cornelius's decision to terminate her employment.

The plaintiff's indirect evidence also fails to establish discriminatory intent. Although the plaintiff has proved the first three elements of a prima facie case of gender discrimination, she has not established that she was replaced by a male whose qualifications were equal or inferior to hers. The plaintiff bases her claim that she was replaced by Kissimus Body on the fact that she saw him working at a cash register during the same hours she had previously worked. However, Body and three others, two of whom were female, were hired as team members prior to the plaintiff's termination. Nothing in the record indicates that the defendant hired Body to replace the plaintiff. Additionally, nothing in the record indicates that Body, and not one of the other newly hired team members, was the plaintiff's replacement. Because the plaintiff has not shown that she was replaced by a male of lesser or equal qualifications, she has not established a prima facie case of gender discrimination.

Even if the plaintiff could establish a prima facie case of gender discrimination, the defendant has offered a legitimate nondiscriminatory reason for terminating the plaintiff's employment. The defendant claims that the plaintiff's insubordination, compounded by the public nature of the confrontations with Brown and Cornelius, constituted an aggravated offense under the discipline policy, for which immediate termination was appropriate. Regardless of whether this is true, the defendant still had discretion to discharge the plaintiff without warning. The discipline policy does not mandate oral and written warnings before termination. The plaintiff's tapes indicate that Cornelius fired her based on the confrontations that she and the two management employees had that day. Nothing in the record indicates that the defendant's proffered reason was illegitimate or discriminatory.

The plaintiff also cannot prove that the defendant's articulated reason was a pretext for sex discrimination. The tapes do not demonstrate that the plaintiff's gender played a role in Cornelius's decision to terminate her. Rather, the tapes indicate that Cornelius's decision was based on the confrontation and on the plaintiff's conduct and attitude toward managerial employees. The plaintiff's allegations of discriminatory remarks do not establish pretext because the plaintiff has not proved that the defendant relied on her gender in deciding to terminate her. The abruptness of the termination and the plaintiff's recording of it belie her claim that intentional gender discrimination was the real reason for her termination.

Because the plaintiff has failed to prove intentional discrimination in connection with her termination, the defendant's motion for summary judgment is due to be granted.

## 2. Hostile Work Environment

To the extent that the plaintiff's complaint attempts to assert a claim for hostile work environment, that claim is barred. The scope of the plaintiff's complaint is "limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.* 431 F.2d 455, 466 (5th Cir. 1970); *see also Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 928 (11th Cir. 1983). The claim must be "like or related to" the allegations in the EEOC charge. *See Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994). Thus, if the plaintiff's charge would have led the EEOC to investigate hostile work environment and would have put the defendant on notice of a hostile work environment claim, then the plaintiff can pursue the claim.

Although the plaintiff's charge reveals that the alleged discrimination was based on sex, the plaintiff alleged discrimination only "in that [she] was replaced by a male." (Plaintiff's Evidentiary Submission 6). The plaintiff's charge contains no facts or particulars that would have led the EEOC to investigate hostile work environment or that would have put the defendant on notice of an allegation of hostile work environment. Compounded by the brevity of the plaintiff's employment, the brevity of her EEOC charge would not have reasonably prompted the EEOC to look into hostile work environment. To the extent that the plaintiff's complaint asserts a claim for hostile work environment, that claim was not within the scope of the EEOC investigation and is therefore barred.

## 3. Conclusion

Any claim by the plaintiff of hostile work environment under Title VII is barred because it was not within the scope of the EEOC investigation of her charge. Because the plaintiff has not

established a prima facie case of gender discrimination in connection with her termination, the defendant's motion for summary judgment is due to be granted.

Dated: July 3/, 1998

                                                            Chief Judge Sam C. Pointer, Jr.

Service List
    Jeffrey Bennitt
    Robyn G. Bufford
    Eddie Leitman
    Lynne Stephens O'Neal